IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL GARCIA,

        Plaintiff,

vs.                                                                         No. CIV-05-1212 JB/RLP

ALBUQUERQUE POLICE OFFICER
D. JARAMILLO and CITY OF ALBUQUERQUE,
a municipal corporation,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Summary Judgment

Against Defendant D. Jaramillo and Memorandum in Support, filed July 7, 2006 (Doc. 33)("Plaintiff's

Summary Judgment Motion").  The Court held a hearing on this motion on August 11, 2006.  The

primary issues are whether the Plaintiff Michael Garcia has demonstrated that there is no genuine

issue concerning: (i) whether the Defendant David Jaramillo violated his First and Fourth Amendment

rights; (ii) whether Jaramillo pursued prosecution against Garcia maliciously in contravention of the

Constitution; and (iii) whether Jaramillo committed upon Garcia the state-law torts of false

imprisonment and battery.  Because the Court finds that there are several genuine issues of material

fact with respect to Garcia's claims and that Jaramillo is entitled to qualified immunity with respect

to certain of Garcia's claims, the Court will deny Garcia's motion for summary judgment.

## FACTUAL BACKGROUND

        Jaramillo is an employee of the City of Albuquerque and was a law enforcement officer acting

in the scope of his employment and under color of state law at all times material to this action.  See

Initial Pretrial Report, Stipulation # 1, at 2, filed December 28, 2005 (Doc. 10)("IPTR").  On the morning of February 28, 2005, Jaramillo and law enforcement officer Anna Gutierrez, who was in the final stages of her training, were conducting a random patrol in the area of Pennsylvania Avenue and Central Avenue, an area that law enforcement officers consider to be a high-crime area.  See IPTR, Stipulation #3, at 2; Deposition of David Jaramillo at 28:24-29:12, 33:22-34:3, 38:5-13 (taken February 20, 2006)("Jaramillo Deposition"); Deposition of Anna Gutierrez 6:18-22 (taken February 20, 2006)("Gutierrez Deposition").  The officers noticed several individuals gathered in a vacant lot, watched them for a few minutes, and observed Garcia make hand-to-hand contact with others in the lot.  See Jaramillo Deposition at 38:21-39:5, 39:14-25; 57:19-25.

In Jaramillo's experience, hand-to-hand contact is consistent with a drug transaction.  See id. at 42:17-43:3.  The officers did not see anything in the hands of the persons they observed -- no alcohol, baggies, tin foil, or cash.  See id. at 39:2-40:7, 41:19-42-2, 42:11-43:10, 50:8-11.  The only activities Jaramillo specifically witnessed relating to Garcia during his surveillance was Garcia standing in the lot and shaking hands with others assembled there.  See id. at 57:19-58:3.

Jaramillo testified that, at the time of the incident, he believed that the lot was posted with a "No Trespassing" sign and that Garcia was knowingly staying in the area with no intention of leaving.  See id. at 42:11-16, 44:25-45:6.  Jaramillo knew, at the time he was making his observations, that there existed no state statute or city ordinance criminalizing loitering.  See id. at  28:15-23.

Jaramillo and Gutierrez approached the lot, at which time, both officers testified, the persons assembled began to walk away; the officers ordered Garcia and six other individuals to stop walking and to sit on a curb.  See id. at 53:6-16; Gutierrez Deposition at 7:22-8:2; IPTR, Stipulation ##3-5, at 2.  Jaramillo alleges that Garcia walked toward the officers, threw his hands up in the air, yelled

that he did not have to do what they said, approached to within arm's length of Gutierrez, and sat down.  See Jaramillo Deposition at 57:2-5, 64:11-18, 65:3-8; Gutierrez Deposition at 27:14-28:12. Jaramillo ordered Garcia to produce photographic identification, and Garcia verbally objected to Jaramillo's order, stating that there was no lawful reason to detain him on the curb or to require him to produce identification.  See IPTR, Stipulation ##6-7, at 2.  In any case, Garcia provided Jaramillo his veteran photographic identification; Jaramillo alleges that Garcia did so after being asked for identification several times.  See id. Stipulation #8, at 2; Jaramillo Deposition 74:5-75:5.  As Garcia was doing so, his driver's license and other cards fell from his wallet onto the street in front of the curb.  See IPTR, Stipulation #9, at 2.  Jaramillo alleges that he thought that the veteran's identification card that Garcia gave him was an insurance card and that he asked Garcia to give him his driver's license.  See Jaramillo Deposition  at 75:25-76:6, 78:5-9.  Garcia refused to do so; Jaramillo alleges that Garcia said, "I don't have to give you sh**."  Id. at 78:10-23.

As Garcia picked up his driver's license he continued to complain and Jaramillo said to Garcia that he had told him to be quiet.  See IPTR, Stipulation ##10-11, at 2.  Jaramillo alleges that, at this point, the other individuals began to take the same angry attitude towards the officers as Garcia and that they began to yell at Jaramillo to leave Garcia alone.  See Jaramillo Deposition at 80:4-21.  In contrast, Garcia alleges that his behavior never caused the other persons detained to act in a threatening manner.  See id. at 80:17-81:1.

Jaramillo alleges that he did not want to pick up Garcia's driver's license himself because he believed it would place him in a vulnerable position.  See Transcript of Proceedings, Interview of Officer David Jaramillo at 13-18. (taken April 26, 2005)("Jaramillo Interview").  Jaramillo also alleges that he believed Garcia's protestations and their effect on the other individuals were placing

his safety in jeopardy. <u>See</u> Jaramillo Deposition 80:4-81:11. Jaramillo pulled out his can of mace and

again told Garcia to give him his driver's license. <u>See id.</u> at 78:24-79:9. Garcia verbally refused, at

which point Jaramillo sprayed mace into Garcia's face, handcuffed him, and placed him under arrest.

<u>See id.</u> at 79:10-16; IPTR, Stipulation ##12-13, at 2-3. Garcia did not resist arrest. <u>See</u> IPTR,

Stipulation #14, at 3.

Garcia was subsequently transported to the Metropolitan Detention Center where he was

booked in jail. <u>See</u> IPTR, Stipulation #15, at 3. Jaramillo charged Garcia with Refusal to Obey an

Officer pursuant to N.M. Stat. § 30-22-1 and proceeded to prosecute him. <u>See</u> IPTR, Stipulation

##16-17, at 3.

## PROCEDURAL BACKGROUND

On October 18, 2005, Garcia filed a Complaint to Recover Damages Due to Deprivation of

Civil Rights and Violations of the New Mexico Tort Claims Act, in which he alleges that Jaramillo

used excessive force in illegally detaining, wrongfully arresting, and falsely imprisoning him in

contravention of the Fourth Amendment; that Jaramillo maliciously prosecuted him; that Jaramillo

committed upon him the state-law torts of false imprisonment and battery; and that Jaramillo

retaliated against him for exercising his First Amendment right of freedom of speech. <u>See</u> Complaint

to Recover Damages Due to Deprivation of Civil Rights and Violations of the New Mexico Tort

Claims Act at 1-6, filed October 18, 2005 (attached to Doc. 1 as Exhibit A)("Complaint"). Jaramillo

and the City of Albuquerque removed the case to federal district court on November 21, 2005. <u>See</u>

Notice of Removal at 1-2, filed November 21, 2005 (Doc. 1). Garcia filed the motion for summary

judgment giving rise to this opinion on July 7, 2006. Jaramillo filed his response on July 28, 2006,

arguing that he is entitled to qualified immunity with regard to Garcia's claims and, in the alternative,

that genuine issues of material fact exist that preclude judgment as a matter of law. See Defendant David Jaramillo's Response to Plaintiff's Motion for Summary Judgment Against Defendant D. Jaramillo, filed July 28, 2006 ("Defendant's Response")(Doc. 36).

## STANDARDS FOR DETERMINING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party. Id. at 249-50 (citations omitted). Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment. See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988). The Court may consider only admissible evidence when ruling on a motion for summary judgment. See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

If a defendant seeks summary judgment, it has an "initial burden to show that there is an absence of evidence to support the nonmoving party's case." Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(quoting Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995))(internal quotations omitted). Upon meeting that burden, the plaintiff must "identify specific facts that show the existence of a genuine issue of material fact." Id. (citations and internal

quotations omitted).  "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Id. (citations and internal quotations omitted).  The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted).

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the legitimate "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)(quoting Butz v. Economou, 438 U.S. 478, 506 (1978)).  Qualified immunity therefore "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must establish: (i) that the defendant violated a constitutional right; and (ii) that the constitutional right violated was clearly established.  See Cortez v. McCauley, 438 F.3d 980, 988 (10th Cir. 2006). "If the plaintiff fails to carry either part of [the] two part burden, the defendant is entitled to qualified immunity." Albright v. Rodriguez, 51 F.3d 1531, 1535 (10th Cir. 1995).  The second part of plaintiff's burden "must be undertaken in light of the specific context of the case, not as a broad proposition . . . ." Saucier v. Katz, 533 U.S. 194, 201 (2001).  "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." Id. at 202.  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly

established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).

In making this determination, the Court will view the evidence in the light most favorable to the non-moving party; however, the record must demonstrate that the plaintiff has satisfied his heavy two-part burden. See Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). "Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful." Cortez v. McCauley, 438 F.3d at 988. If the plaintiff establishes both a violation of a constitutional right and that the right was clearly established at the time of the alleged conduct, the burden shifts to the defendant, who must demonstrate that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law. See id. If there is a factual dispute involving an issue on which the qualified immunity turns, summary judgment based on a qualified immunity defense in a § 1983 action is not appropriate. See Poe v. Haydon, 853 F.2d 418, 426 (6th Cir. 1988).

In determining whether a defendant is entitled to qualified immunity, a court cannot not assume that a constitutional violation exists; rather, a court must consider the constitutional violation issue before taking up the clearly established issue:

> Taken in the light most favorable to the party asserting the injury, do the facts alleged show the government official's conduct violated a constitutional right? This must be the initial inquiry. In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry. The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the government official's conduct was unlawful in the circumstances of the case.

Kirkland v. St. Vrain Valley School Dist. No. RE-1J, 464 F.3d 1182, 1188-89 (10th Cir. 2006).

## LAW REGARDING THE FOURTH AMENDMENT

The United States Court of Appeals for the Tenth Circuit has identified three categories of police-citizen encounters: (i) consensual encounters, which do not implicate the Fourth Amendment; (ii) investigative detentions, which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (iii) arrests, which are the most intrusive of Fourth Amendment seizures and are reasonable only if supported by probable cause. See United States v. Lopez, 443 F.3d 1280, 1283 (10th Cir. 2006).

### 1.    Reasonable Suspicion and Investigative Detentions.

The Supreme Court of the United States' decision in Terry v. Ohio, 392 U.S. 1 (1968), provides a two-prong test for determining the reasonableness of investigative detentions.  First, it must be decided whether the detention was "justified at its inception." Terry v. Ohio, 392 U.S. at 20. An officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Id. at 21.  Those facts must tend to show that the detainee has committed or is about to commit a crime.  See United States v. Johnson, 364 F.3d 1185, 1189 (10th Cir. 2004).  Second, the detaining officer's actions must be "reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio, 392 U.S. at 20.  At both stages, the reasonableness of the officer's suspicions is judged by an objective standard taking into account the totality of the circumstances and information available to the officer, including the area where the detention took place and the officer's own experience. Depending on the totality of the circumstances, ambiguous behavior, susceptible to an innocent interpretation, may give rise to a reasonable suspicion of criminal activity. See Oliver v. Woods, 209

F.3d 1179, 1188 (10th Cir. 2000).  "[A]s long as an officer has a particularized and objective basis for suspecting an individual may be involved in criminal activity, he may initiate an investigatory detention even if it is more likely than not that the individual is not involved in any illegality."  United States v. Johnson, 364 F.3d at 1194.

When an officer is conducting a lawful investigative detention, one based on reasonable suspicion of criminal activity, the officer may request identification and an explanation of the detainee's presence in the area, and may detain the individual until the investigation is completed. See Oliver v. Woods, 209 F.3d at 1189.  The Fourth Amendment "does not permit officers to arrest an individual simply because he refuses to present identification when the officers have no basis whatsoever to suspect the individual of criminal conduct to support the initial detention."  Id. at 1190. See Brown v. Texas, 443 U.S. 47, 52-53 (1979)(holding that "to detain appellant and require him to identify himself violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe appellant was engaged or had engaged in criminal conduct").  Assuming, however, state law allows, an officer may arrest a detainee for failure to identify himself if the identification request is reasonably related to the circumstances justifying the stop.  See Hibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt County, 542 U.S. 177, 178 (2004).  An officer with reasonable suspicion may arrest a detainee for failing to present identification upon request; however, Kolender v. Lawson, 461 U.S. 352 (1983), suggests that an officer cannot arrest a detainee for failing to produce a form of identification that the officer independently and subjectively determines is a more "credible or reliable" form of identification than another valid form of identification the detainee presents, id. at 359-62.

When an investigative detention is the subject of a § 1983 action, the defendant officer is entitled to immunity if a reasonable officer could have believed that reasonable suspicion existed to

detain the plaintiff; officers need only have had "arguable reasonable suspicion," not actual reasonable suspicion to qualify for immunity.  See Cortez v. McCauley, 438 F.3d at 990-92.  The standard for arguable reasonable suspicion is "whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that [reasonable suspicion] existed in the light of well established law." Gold v. City of Miami, 121 F.3d 1442, 1145 (11th Cir. 1997).

### 2.    Probable Cause and Arrest.

"A police officer violates an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer makes a warrantless arrest without probable cause." Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002)(citing Tennesee v. Garner, 471 U.S. 1, 7 (1985)).  A police officer may effectuate a warrantless arrest so long as there is probable cause for the arrest.  See Michigan v. DeFillippo, 443 U.S. 31, 36 (1979).  "'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. at 37.

"When a warrantless arrest is the subject of a [§] 1983 action, the defendant arresting officer is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff." Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995)(citations and internal quotations omitted).  As with reasonable suspicion, officers are entitled to qualified immunity with respect to probable cause if they had "arguable probable cause;" they are not required to have had actual probable cause.  See Cortez v. McCauley, 438 F.3d at 990-91.  "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Id.

(citation and internal quotations omitted).  "Probable cause need only exist as to any offense that

could be charged under the circumstances."  <u>Smith v. Wampler</u>, 108 Fed. Appx. 560, 567 (10th Cir.

2004)(citations and internal quotations omitted).  The Tenth Circuit recently stated:

> [A] police officer's subjective reason for making the arrest need not be the criminal
> offense as to which the known facts provide probable cause.  An arrest is not invalid
> under the Fourth Amendment simply because the police officer subjectively intended
> to base the arrest on an offense for which probable cause is lacking, so long as the
> circumstances, viewed objectively, justify the arrest.  Subjective intent of the arresting
> officer, however it is determined (and of course subjective intent is always determined
> by objective means), is simply no basis for invalidating an arrest.  Those are lawfully
> arrested whom the facts known to the arresting officers give probable cause to arrest.

<u>Apodaca v. City of Albuquerque</u>, No. 05-2008, 2006 U.S. App. LEXIS 8811, at **7-8 (10th Cir.

April 11, 2006).

### 3.    <u>Excessive Use of Force</u>.

Courts analyze claims that law enforcement officers used excessive force in the course of an

investigative detention, arrest, or other seizure under the Fourth Amendment reasonableness standard.

<u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989); <u>Cortez v. McCauley</u>, 438 F.3d at 993.  In <u>Graham</u>

<u>v. Connor</u>, the Supreme Court stated:

> Determining whether the force used to effect a particular seizure is reasonable under
> the Fourth Amendment requires a careful balancing of the nature and quality of the
> intrusion on the individual's Fourth Amendment interests against the countervailing
> governmental interests at stake. . . .  Because the test of reasonableness under the
> Fourth Amendment is not capable of precise definition or mechanical application
> . . . its proper application requires careful attention to the facts and circumstances of
> each particular case, including the severity of the crime at issue, whether the suspect
> poses an immediate threat to the safety of the officers or others, and whether he is
> actively resisting arrest or attempting to evade arrest by flight.

490 U.S. at 396 (internal citations and quotations omitted).  The <u>Graham</u> Court also stated:

> The reasonableness of a particular use of force must be judged from the perspective
> of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

. . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation.

　　　　As in other Fourth Amendment contexts, however, the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Id. at 493-94.

Excessive use of force claims are subsumed within unjustified seizure claims.  If plaintiffs, therefore, establish that they were seized unreasonably, they cannot recover on independent excessive use of force claims.  See Cortez v. McCauley, 438 F.3d at 1001.

## LAW REGARDING MALICIOUS PROSECUTION

A claim for a constitutional violation based on malicious prosecution requires that three elements be met.  See Pierce v. Gilchrist, 359 F.3d 1279, 1291-94 (10th Cir. 2004)  First, a plaintiff must demonstrate that prosecutorial proceedings were initiated.  See id. at 1291-92.  Second, the plaintiff must show that the original action was terminated in the plaintiff's favor.  See id. at 1294. Finally, the plaintiff must demonstrate that there was no probable cause to support the original arrest, continued confinement, or prosecution.  See id.  The existence of probable cause for arrest is an absolute bar to a § 1983 claim for malicious prosecution, see Fernandez v. Perez, 937 F.2d 368, 371 (7th Cir. 1991), even if the defendant allegedly had a malicious motive for arresting the plaintiff, see Mark v. Furay, 769 F.2d 1266, 1269 (7th Cir. 1985).

-12-

## LAW REGARDING THE TORTS OF
## FALSE IMPRISONMENT AND BATTERY IN NEW MEXICO

N.M. Stat. § 41-4-12 sets out the applicable waiver of immunity for the acts or omissions of

law enforcement officers. The section provides:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

N.M. Stat. § 41-4-12.  When analyzing whether an officer's actions create liability for tort claims,

the officer's perspective is the central focus; the reasonableness of an officer's use of force is

measured "from the perspective of the officer on the scene, with the understanding that officers must

often make split-second decisions in difficult situations."  Archuleta v. Lacuesta, 1999-NMCA-113,

¶ 8, 128 N.M. 13, 15, 988, P.2d 883, 885.

N.M. Stat. § 30-4-3 codifies the elements of the tort of false imprisonment.  Section 30-4-3

states: "False imprisonment consists of intentionally confining or restraining another person without

his consent and with knowledge that he has no lawful authority to do so."  N.M. Stat. § 30-4-3.  See

State v. Powers, 1998-NMCA-133, ¶ 18, 126 N.M. 114, 119, 967 P.2d 454, 459 (citing § 30-4-3 for

the elements of the tort of false imprisonment).

N.M. Stat. § 30-3-4 sets forth the elements of the tort of battery.  Section 30-3-4 provides:

"Battery is the unlawful, intentional touching or application of force to the person of another, when

done in a rude, insolent or angry manner."  N.M. Stat. § 30-3-4.  See State v. Seal, 76 N.M. 461,

461, 415 P.2d 845, 845 (1966)(quoting § 30-3-4's identical predecessor statute for the elements of

the tort of battery).  In State v. Seal, the New Mexico Supreme Court quoted Commonwealth v.

Gregory, 132 Pa. Super. 507, 512, 1 A.2d 501, 503 (1938), stating:

> The least touching of another's person willfully, or in anger, is a battery.  However, it is not every touching or laying on of hands that constitutes an assault and battery; the touching of, or injury to another must be done in an angry, revengeful, rude or insolent manner so as to render the act unlawful.

State v. Seal, 76 N.M. at 461, 415 P.2d at 845 (internal citations and quotations omitted).

## LAW REGARDING THE FIRST AMENDMENT

### 1.  Fighting Words Doctrine.

As the Tenth Circuit has recognized, "[t]he Supreme Court has addressed the subject of

fighting words in several contexts."  Cannon v. Denver, 998 F.2d 867, 872 (10th Cir. 1993).  In

Cannon v. Denver, the Tenth Circuit summarized the Supreme Court's "fighting words doctrine":

> In Cantwell v. Connecticut, 310 U.S. 296 (1940), the defendant was arrested for a breach of the peace in a predominantly Roman Catholic neighborhood after he played a record on the streets which denounced organized religion, and especially Catholicism, as the instrument of Satan. No crowd was drawn, but two of the hearers testified that they were close to violence. The Court reversed Cantwell's conviction on a count for commission of the common law offense of inciting a breach of the peace, stating:
>
>> Cantwell's conduct, in the view of the court below, considered apart from the effect of his communication upon his hearers, did not amount to a breach of the peace.  One may, however, be guilty of the offense if he commits acts or makes statements likely to provoke violence and disturbance of good order, even though no such eventuality be intended.  Decisions to this effect are many, but examination discloses that, in practically all, the provocative language which was held to amount to a breach of the peace consisted of profane, indecent, or abusive remarks directed to the person of the hearer.  Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.
>
>> We find in the instant case no assault or threatening of bodily harm,

-14-

no truculent bearing, no intentional discourtesy, no personal abuse. On the contrary, we find only an effort to persuade a willing listener to buy a book or to contribute money in the interest of what Cantwell, however misguided others may think him, conceived to be true religion.

\* \* \* \*

310 U.S. at 309-11 (emphasis added).

Two years later in Chaplinsky v. New Hampshire, 315 U.S. 568 . . . (1942), the Court upheld the conviction of a defendant who had called a police officer to his face "a God damned racketeer" and a "damned Fascist." Id. at 569. The court held this language to be "fighting words," stating there was no constitutional problem in punishing utterances, inter alia, of "the insulting or fighting words -- those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." Id. at 572 (emphasis added). The Court stated that "it has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." Id.

We also find that Cohen v. California, 403 U.S. 15 . . . (1971), is instructive. When confronted with an appeal from a conviction of a man who had entered a courthouse wearing a jacket which read "F--- the Draft," the Supreme Court reversed. It held that the words on the jacket did not constitute fighting words. Rather fighting words were "those personally abusive epithets which, when addressed to the ordinary citizen, are as, a matter of common knowledge, inherently likely to provoke violent reaction." Id. at 20 (emphasis added). The Court said that while the obscenity displayed in relation to the draft was not uncommonly "employed in a personally provocative fashion, in this instance it was clearly not 'directed to the person of the hearer.'" Id. (quoting Cantwell, 310 U.S. at 309). The Court noted that "words are often chosen as much for their emotive as their cognitive force. We cannot sanction the view that the constitution, while solicitous of the cognitive content of individual speech, has little or no regard for that emotive function which, practically speaking, may often be the more important element of the overall message sought to be communicated." Id. at 26.

Here the defendants have argued that the signs aroused violent feelings in some persons who viewed them. The fact that speech arouses some people to anger is simply not enough to amount to fighting words in the constitutional sense. "[A] function of free speech under our system is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." Terminiello v. Chicago, 337 U.S. 1, 4 (1949). It is only where "the speaker passes the bounds of argument or

persuasion and undertakes incitement to riot" that the police may intervene to prevent a breach of the peace. <u>Feiner v. New York</u>, 340 U.S. 315, 321 . . . (1951). The Court in <u>Feiner</u> upheld a conviction of a man who addressed a crowd of 75 or 80 people, both blacks and whites, who "gave the impression that he was endeavoring to arouse the Negro against the white, urging that they rise up in arms and fight for equal rights." <u>Id.</u> at 317.

<u>Cannon v. Denver</u>, 998 F.2d at 872-73 (10th Cir. 1993).

After discussing the Supreme Court's cases on fighting words, the Tenth Circuit set out its fighting words test: "Fighting words are thus epithets (1) directed at the person of the hearer, (2) inherently likely to cause a violent reaction, and (3) playing no role in the expression of ideas." <u>Id.</u> at 873.  See <u>Burns v. Bd. of County Comm'rs</u>, 330 F.3d 1275, 1285 (10th Cir. 2003)(reiterating the above described test as the Tenth Circuit's fighting words test).  The Tenth Circuit has noted that "[i]t has been stated that 'fighting words are not a means of exchanging views, rallying supporters or registering a protest; they are directed against individuals to provoke violence or inflict injury.'" <u>Cannon v. Denver</u>, 998 F.2d at 873 n.4 (quoting <u>R.A.V. v. City of St. Paul</u>, 505 U.S. 377, 401 (1992)(White, J., concurring)).  "To be punishable, words must do more than bother the listener; they must be nothing less than 'an invitation to exchange fisticuffs.'" <u>Johnson v. Campbell</u>, 332 F.3d 199, 212 (3rd Cir. 2003)(quoting <u>Texas v. Johnson</u>, 491 U.S. 397, 409 (2003)).

"[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.  Speech is often provocative and challenging. . . . But it is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." <u>Houston v. Hill</u>, 482 U.S. 451, 461 (1987)(citation omitted).  The First Amendment also protects a fair amount of verbal protest directed toward a police officer.  See <u>United States v. McKinney</u>, 9 Fed. Appx. 887, 887-890 (10th Cir. 2001)(finding that a person who twice told an officer to "go f***

himself," engaged in protected speech); Buffkins v. City of Omaha, 922 F.2d 465, 472 (8th Cir. 1990)(holding that the district court should have found as a matter of law that the use of the word "asshole" directed at police officers does not constitute fighting words); Duran v. City of Douglas, 904 F.2d 1372, 1377-78 (9th Cir. 1990)(stating that arrest for obscene gesture toward officer would be a "serious First Amendment violation").

### 2.   **Expressive Conduct**.

The First Amendment literally proscribes the abridgment of "speech" only, but the Supreme Court has long recognized that the First Amendment's protection does not end at the spoken or written word -- "conduct may be sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." See Texas v. Johnson, 491 U.S. 397, 404 (1989)(internal quotations omitted). The Supreme Court has rejected, however, "the view that an apparently limitless variety of conduct can be labeled speech whenever the person engaging in the conduct intends thereby to express an idea." United States v. O'Brien, 391 U.S. 367, 376 (1968). In determining whether particular conduct possesses sufficient communicative elements to warrant First Amendment protection, courts should assess whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." Spence v. Washington, 418 U.S. 405, 410-11 (1974). See United States v. Grace, 461 U.S. 171, 176 (1983)(acknowledging the expressive nature of picketing); Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 505 (1969)(recognizing the expressive nature of black armbands worn to protest U.S. military involvement in Vietnam); Brown v. Louisiana, 383 U.S. 131, 141-42 (1966)(noting the expressive nature of a sit-in by African-Americans in a "whites only" area to protest segregation).

The government may restrict expressive conduct more freely than it can the written or spoken word, but it may not proscribe particular conduct because it has expressive elements.  See Texas v. Johnson, 491 U.S. at 406.  In R.A.V. v. City of St. Paul, 505 U.S. 377, (1992), the Supreme Court stated:

> We have long held . . . that nonverbal expressive activity can be banned because of the action it entails, but not because of the ideas it expresses – so that burning a flag in violation of an ordinance against outdoor fires could be punishable, whereas burning a flag in violation of an ordinance against dishonoring the flag is not.

Id. at 385.  Thus, the power to proscribe particular speech on the basis of a non-content element does not entail the power to proscribe the same speech on the basis of a content element.  See id. at 386.

### 3.      Retaliation for Exercise of First Amendment Rights.

To prevail on a claim of retaliation in violation of the First Amendment, a plaintiff must show: "(1) he was engaged in constitutionally protected activity, (2) defendant's actions caused him to suffer an injury that likely would chill a person of ordinary firmness from continuing to engage in that activity, and (3) defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."  Lackey v. County of Bernalillo, No. 97-2265, 1999 U.S. App. LEXIS 75, at *11 (10th Cir. January 5, 1999)(citations omitted).

"'[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.'"  Poole v. County of Otero, 271 F.3d 955, 961 (10th Cir. 2001)(quoting DeLoach v. Bevers, 922 F.2d 618, 620 (10th Cir. 1990)).  Although the issue in Poole v. County of Otero did not involve retaliatory arrest for the exercise of protected speech, and the Tenth Circuit has not specifically addressed the situation currently before this Court, the Sixth Circuit has stated in a similar situation: "[T]he existence of probable cause is not determinative of the constitutional question if, as alleged here, the plaintiff was

-18-

arrested in retaliation for his having engaged in constitutionally protected speech.  The law is well established that 'an act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.'" Greene v. Barber, 310 F.3d 889, 894 (6th Cir. 2002)(citing Bloch v. Ribar, 156 F.3d 673, 681-82 (6th Cir. 1998), and quoting Matzker v. Herr, 748 F.2d 1142, 1150 (7th Cir. 1984), and DeLoach v. Bevers, 922 F.2d 618, 620 (10th Cir. 1990)).

## ANALYSIS

Qualified immunity and genuine issues of material fact preclude the Court from granting summary judgment in favor of Garcia on any of his claims.  The Court finds that Jaramillo is entitled to qualified immunity with regard to Garcia's expressive conduct based First Amendment retaliation claim, and that there are material factual disputes concerning Garcia's Fourth Amendment claims for illegal detention, wrongful arrest, false imprisonment, and excessive use of force, malicious prosecution claim, state-law tort claims for false imprisonment and battery, and verbal expression based First Amendment retaliation claim.

I.      **GENUINE ISSUES OF MATERIAL FACT EXIST WITH RESPECT TO GARCIA'S FOURTH AMENDMENT CLAIM FOR ILLEGAL DETENTION, WRONGFUL ARREST, AND FALSE IMPRISONMENT.**

With regard to qualified immunity, at first blush, it appears that Jaramillo does not qualify for its protection.  First, if Garcia's allegations regarding Jaramillo's lack of reasonable suspicion are accepted as true,  Jaramillo illegally detained and falsely imprisoned Garcia in violation of the Fourth Amendment.  See Plaintiff's Summary Judgment Motion at 11.  Second, the right to be free of unreasonable seizure – illegal detention and false imprisonment – is clearly established.  See Terry v. Ohio, 392 U.S. at 20-21.  Given the doctrine of arguable reasonable suspicion, however, Jaramillo

may still be entitled to qualified immunity.

If a reasonable officer in the same circumstances and possessing the same knowledge as Jaramillo could have reasonably believed that reasonable suspicion existed to detain Garcia, Jaramillo qualifies for immunity.  See Cortez v. McCauley, 438 F.3d at 990-92.  Considering Jaramillo's allegations that he believed the "No Loitering" sign was a "No Trespass" sign, that he saw Garcia make hand-to-hand contact with several others present in the lot, that, in his experience, such behavior is indicative of drug dealing, and that the area where this activity was taking place is known as a high crime area, it is possible that a jury might find that a reasonable officer could have reasonably believed that reasonable suspicion existed under the circumstances.  Because it is inappropriate to grant summary judgment where there is a factual dispute involving an issue on which qualified immunity turns, see Poe v. Haydon, 853 F.2d at 426, the Court will not grant Garcia's motion on this issue.

If it is determined that Jaramillo could not have reasonably believed that reasonable suspicion existed to detain Garcia, Jaramillo necessarily could not have had actual reasonable suspicion to detain Garcia, and, therefore, could not have, per the Fourth Amendment, arrested Garcia for failure to present identification.  See Oliver v. Woods, 209 F.3d at 1189.  If, however, it is determined that Jaramillo had reasonable suspicion to detain Garcia initially, the Court's analysis of Garcia's claim that Jaramillo conducted a wrongful arrest and false imprisonment because he did not have probable cause when he arrested Garcia leads the Court to a conclusion similar to that it reached concerning reasonable suspicion and qualified immunity.

If reasonable suspicion is presumed for the sake of analysis, but for the arguable probable cause doctrine, Garcia would overcome Jaramillo's qualified immunity defense – first, Garcia alleges

facts that tend to show Jaramillo arrested him without probable cause, see Plaintiff's Summary Judgment Motion at 17, and, second, the right not to be arrested without probable cause is clearly established, see Olsen v. Layton Hills Mall, 312 F.3d at 1312.   Jaramillo, however, qualifies for immunity on this issue if a reasonable officer could have believed that probable cause existed to arrest Garcia.  See Romero v. Fay, 45 F.3d at 1476.  Moreover, Jaramillo need not have had probable cause as to resisting or obstructing an officer pursuant to N.M. Stat. § 30-22-1, so long as he reasonably believed that he had probable cause as to any offense with which Garcia could have been charged, he is entitled to qualified immunity.  See Smith v. Wampler, 108 Fed. Appx. at 567. Jaramillo alleges that he had reasonable suspicion to detain Garcia, that he believed the veteran's identification card Garcia gave him was an insurance card, not a valid form of identification, and that he arrested Garcia for refusing to provide identification, not because of the language he was using. Given those allegations, it is possible that a jury could find that a reasonable officer could have reasonably believed that probable cause existed.  While an officer with reasonable suspicion may arrest a person for failing to present identification upon request, an officer cannot require a citizen to produce what the officer subjectively decides to be a "credible or reliable" form of identification. See  Kolender v. Lawson, 461 U.S. 359-62.  As such, Jaramillo's allegations raise several factual issues concerning the existence of arguable probable cause, including: (i) whether Garcia gave Jaramillo his veteran's identification card; (ii) whether Jaramillo believed that the veteran's identification card was an insurance card and not a valid form of identification; and (iii) whether, if Jaramillo did conclude that the identification card Garcia gave him was not a valid form of identification, that conclusion was objectively reasonable.  Because it is not proper to grant summary judgment where there is a factual dispute involving an issue on which qualified immunity turns, see

Poe v. Haydon, 853 F.2d at 426, the Court will not grant Garcia's motion on this issue.

## II.   A GENUINE ISSUE OF MATERIAL FACT EXISTS WITH RESPECT TO GARCIA'S FOURTH AMENDMENT CLAIM FOR EXCESSIVE USE OF FORCE.

The Court must first decide whether Jaramillo qualifies for immunity with regard to this claim.[1]   First, accepting as true that the basis for the crime at issue here, failing to present an identification, was minor, that Garcia had, per Jaramillo's request for identification, already given Jaramillo his veteran's identification card,  that there was no indication that Garcia was actively resisting or attempting to flee, and that Jaramillo sprayed mace into Garcia's face, Garcia makes a showing of excessive force in violation of the Fourth Amendment.  See Plaintiff's Summary Judgment Motion at 19.   Second, it was clearly established at the time of Jaramillo's conduct that the use of mace under the circumstances that Garcia alleges amounted to an excessive use of force.  In Martinez v. N.M. Dep't of Pub. Safety, 47 Fed. Appx. 513 (2002), the Tenth Circuit decided that macing a handcuffed woman who refused to enter the backseat of a police care was an excessive use of force. See id. at 516.   In reaching that conclusion, the Martinez court took  into account that the woman was handcuffed, that there was no indication that she actively resisted or attempted to flee, that the crimes at issue were of minor severity, and that the police officer stated she did not cause him to fear for his safety.   Id.   The Tenth Circuit's approach appears to comport with other courts' determinations of the status of the case law:

> Courts have consistently concluded that using [mace] is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else. Courts have consistently concluded that using [mace] is reasonable where the plaintiff was either

---

[1] The Court notes that, if Jaramillo's investigative detention and arrest of Garcia are determined to have been unreasonable seizures, Garcia cannot recover on his independent excessive use of force claim.  See Cortez v. McCauley, 438 F.3d at 1001.

> resisting arrest or refusing police requests, such as requests to enter a patrol car or go to the hospital. Furthermore, as a means of imposing force, [mace] is generally of limited intrusiveness, and it is designed to disable a suspect without causing permanent physical injury.  Indeed, [mace] is a very reasonable alternative to escalating a physical struggle with an arrestee.

Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002)(internal citations and quotations omitted). Thus, relevant case law should  have put Jaramillo on notice that using mace in the manner and under the circumstances that Garcia alleges was unconstitutional.  Garcia alleges, with some force, that the crime at issue was minor and that there was no indication that he was actively resisting or attempting to flee.  See Plaintiff's Summary Judgment Motion at 19. Because, viewing the facts in the light most favorable to Garcia, a violation of a clearly established constitutional right can be demonstrated, Jaramillo is not entitled to qualified immunity.

While the Court finds that Jaramillo is not entitled to qualified immunity on this claim, it also finds that summary judgment on this claim is inappropriate.  The Court believes that, viewed in the light most favorable to Jaramillo, the non-moving party for summary judgment purposes, there are genuine issues of material fact precluding a judicial determination whether Jaramillo's conduct was objectively reasonable given the totality of the circumstances.  Jaramillo alleges that he used the mace arresting someone who he believed was disobeying and resisting law enforcement, and whom he believed he had probable cause to arrest for refusing to present a valid form of identification.  While the crime at issue was of minor severity, Garcia had not yet been handcuffed, Garcia was allegedly non-compliant and combative, Garcia's words and actions were allegedly causing the six other individuals being detained to become restless and resistant, and Jaramillo allegedly feared for his safety and the safety of his trainee-partner.  See Jaramillo Deposition 78:10-23, 80:17-81:1, 80:4-81:1; Defendant's Response at 18-22.  In reaching its decision, the Court notes that Jaramillo's

allegations regarding the effect of Garcia's protestations on the demeanor and behavior of the other individuals present and the concern for his safety and the safety of his trainee-partner that Garcia's alleged behavior created could be particularly important to a reasonableness determination.  Garcia has not refuted Jaramillo's allegations with specific, factual evidence that would make the submission of the reasonableness question to a jury inappropriate.

## III.   A GENUINE ISSUE OF MATERIAL FACT EXISTS WITH RESPECT TO GARCIA'S MALICIOUS PROSECUTION CLAIM.

Jaramillo does not dispute that Garcia satisfies the first two elements of a malicious prosecution claim; Jaramillo acknowledges that he initiated criminal proceedings and that the original action was terminated in Garcia's favor.  See IPTR, Stipulation #16; Defendant's Response at 22. With regard to the third element of a malicious prosecution claim, however, that there was no probable cause to support the original arrest, a genuine issue of material fact exists.  As with Garcia's Fourth Amendment wrongful arrest and false imprisonment claim, given Jaramillo's allegations that he had reasonable suspicion to detain Garcia, that he believed the veteran's identification card Garcia gave him was an insurance card, not a valid form of identification, and that he arrested Garcia for refusing to provide identification, not because of the language he was using, it is possible that a jury could find that a reasonable officer in Jaramillo's position could have reasonably believed that probable cause existed.  Because there is a genuine issue of material fact with respect to the probable cause element of Garcia's malicious prosecution claim, the Court believes that summary judgment is inappropriate on this issue.

**IV.    GENUINE ISSUES OF MATERIAL FACT EXIST WITH RESPECT TO GARCIA'S
        STATE-LAW TORT CLAIMS FOR FALSE IMPRISONMENT AND BATTERY.**

Immunity is not an issue with regard to Garcia's tort claims for false imprisonment and

battery, because N.M. Stat. § 41-4-12 waives such for law enforcement officers accused of conduct

subsumed in those claims.  There are, however, genuine issues of material fact with respect to both

the false imprisonment claim and the battery claim.

If it is determined that Garcia's detention and arrest were unlawful, Garica seeks damages for

false imprisonment.  The tort of false imprisonment requires the plaintiff to demonstrate that the

defendant acted with knowledge that he did not have the lawful authority to confine or restrain the

plaintiff without the plaintiff's consent.  If, as Jaramillo alleges, he reasonably believed that he had

reasonable suspicion to conduct an investigative detention of Garcia and probable cause to arrest

Garcia, he could not have acted with the requisite knowledge needed to satisfy the false imprisonment

claim.  Because, as in the context of the Fourth Amendment and malicious prosecution, whether

Jaramillo reasonably believed he had reasonable suspicion and probable cause are genuine issues of

material fact, the Court finds that it cannot grant Garcia's request for summary judgment on his false

imprisonment claim.

If it is determined that Garcia's detention and arrest were lawful, Garcia seeks damages

against Jaramillo for battery.  The tort of battery requires the plaintiff to show that the defendant

intentionally applied force to the plaintiff's person in a rude, insolent, or angry manner.  Garcia alleges

that Jaramillo spayed him with mace because he was angry that Garcia would not hand him his

driver's license.  See Plaintiff's Summary Judgment Motion at 20.  In contrast, Jaramillo alleges that

his spraying Garcia with mace was not done in anger, but, rather to effectuate the arrest of Garcia

whose non-compliant and combative words and actions were causing the six other individuals being

detained to become restless and resistant, and Jaramillo to fear for his safety and the safety of his partner.  See Jaramillo Deposition 78:10-23, 80:17-81:1, 80:4-81:1; Defendant's Response at 18-22. Considering those allegations, and that whether Garcia's detention and arrest were lawful are themselves genuine issues of material fact, it is possible that a jury could find that Jaramillo did not commit a battery upon Garcia.  The Court, therefore, will not grant Garcia summary judgment on this claim.

## V. JARAMILLO IS ENTITLED TO QUALIFIED IMMUNITY INSOFAR AS GARCIA'S FIRST AMENDMENT CLAIM FOR RETALIATION RESTS ON GARCIA'S EXPRESSIVE CONDUCT AND A GENUINE ISSUE OF MATERIAL FACT EXISTS WITH RESPECT TO GARCIA'S FIRST AMENDMENT CLAIM FOR RETALIATION AGAINST VERBAL EXPRESSION.

Insofar as Garcia's First Amendment retaliation claim rests upon an argument that Jaramillo was reacting to Garcia's expressive conduct – his refusal to give Jaramillo his driver's license – Jaramillo is entitled to qualified immunity.

Garcia's allegations concerning expressive conduct do not establish that Jaramillo violated his First Amendment right to freedom of speech.  The Court notes that, with respect to this issue, it accepts the facts in the light most favorable to Garcia.  Recognizing such, the Court acknowledges that Garcia alleges: (i) that his physical non-act – refusing to give Jaramillo his driver's license – was expressive conduct communicating Garcia's criticism and challenge of Jaramillo's request for his driver's license, because he had already given Jaramillo his veteran's identification card; (ii) that his physical protest should be accorded the same First Amendment protection as verbal expression; and (iii) that Jaramillo sprayed mace in his face and arrested him because of his expressive conduct.[2]  See

---

[2] Garcia, in apparent support for his contention that his allegations demonstrate a First Amendment violation, cites Kolender v. Lawson.  The Kolender Court sustained a facial challenge based on vagueness to an anti-loitering statute requiring persons loitering or wandering the streets

Transcript of Hearing at 21:16-23:9 (taken August 11, 2006).[3]  Garcia fails, however, to present sufficient evidence demonstrating that his conduct was intended to convey a particularized message and fails to show that there was a great likelihood that those who viewed his conduct would understand any such message.  See Spence v. Washington, 418 U.S. at 410-11; Zalewska v. County of Sullivan, 316 F.3d 314, 319 (2d Cir. 2003)("To be sufficiently imbued with communicative elements, an activity need not necessarily embody a narrow, succinctly articulable message, but the reviewing court must find, at the very least, an intent to convey a particularized message along with a great likelihood that the message will be understood by those viewing it.")(internal citations and quotations omitted).  Garcia does not present any evidence in sufficient, factual form – by his affidavits, depositions, answers to interrogatories, and admissions on file – that shows he intended his physical non-act to convey a particularized message or that the likelihood that those who viewed his conduct would understand any such message.  See Church of the Am. Knights of the Ku Klux Klan v. Kerik, 356 F.3d 197, 205 (2d Cir. 2004)("The party asserting that its conduct is expressive bears the burden of demonstrating that the First Amendment applies and that party must advance more than a mere plausible contention that its conduct is expressive.")(internal citations and

---

to provide a "credible and reliable" identification and to account for their presence upon police request.  Id. at 361-62.  The Court, however, does not believe that the Kolender v. Lawson opinion advances the understanding of the issue for which it is cited.  While the Supreme Court "makes a vague reference to potential suppression of First Amendment liberties . . . the precise nature of the liberties threatened are never mentioned." Id. (Rehnquist, J. dissenting).  The Kolender Court noted its concern that the challenged statute had the potential to suppress First Amendment rights, but based its analysis and holding on vagueness concerns rooted in due process jurisprudence.  See id. at 357-63.  As such, the Court is not in a position to find that Kolender v. Lawson is determinative or highly pertinent here.

[3] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

quotations omitted).  As such, the Court cannot find that Garcia's conduct possessed sufficient communicative elements to warrant First Amendment protection.  See id.  In reaching this determination, the Court notes that Garcia's conduct, as alleged, was more similar to "an act of mindless nihilism" than to those acts that the Supreme Court has explicitly recognized as warranting First Amendment protection, such as wearing black armbands to convey a message about war, picketing for heightened labor standards, and holding sit-ins to protest segregation.  See id.; United States v. Grace, 461 U.S. at 176; Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 505; Brown v. Louisiana, 383 U.S. at 141-42.

Even if Garcia had demonstrated that Jaramillo violated his First Amendment right, Jaramillo would be entitled to qualified immunity, because Garcia cannot demonstrate that, in light of the specific context of the case, it would have been clear to a reasonable officer that Jaramillo's conduct was unlawful.  There are no Supreme Court or Tenth Circuit opinions, and there is no established weight of authority from other courts, to support Garcia's contention that physically refusing to present a particular form of identification to a law enforcement officer is protected speech and that arresting someone for such is retaliation.  It has been clearly established that arresting someone for failing to present valid identification pursuant to an unlawful seizure violates the Fourth Amendment; it has not been clearly established that such violates the First Amendment.  See Brown v. Texas, 443 U.S. at 47, 52-53 ("The application of [the provision] to detain appellant and require him to identify himself violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe appellant was engaged or had engaged in criminal conduct.  Accordingly, appellant may not be punished for refusing to identify himself . . . ."); Oliver v. Woods, 209 F.3d at 1190 ("In Brown, the Supreme Court made it clear the Fourth Amendment does not permit officers to arrest an

individual simply because he or she refuses to present identification when the officers have no basis whatsoever to suspect the individual of criminal conduct to support the initial detention); Albright v. Rodriguez, 51 F.3d at 1539 (holding that the "[p]laintiff's claim fails because under existing First Amendment law a reasonable officer would not know that he violates the First Amendment by arresting a person who refuses to identify himself during a lawful investigative stop").

The Court thus finds that, because Garcia cannot satisfy the elements needed to overcome Jaramillo's qualified immunity defense on this issue, Jaramillo qualifies for immunity with respect to Garcia's claim that Jaramillo retaliated against his protected expressive conduct.

Insofar as Garcia's First Amendment retaliation claim rests upon an argument that Jaramillo was reacting to Garcia's expressive speech – complaining about his detention and the requests for his identification – Jaramillo is not entitled to qualified immunity. Accepting as true Garcia's allegations that Jaramillo sprayed mace in his face and arrested him because of his verbal protestations of Jaramillo's detention of him and requests for identification from him, Garcia establishes that Jaramillo violated his First Amendment right of free speech. See IPTR, Stipulation ## 10-13; Plaintiff's Summary Judgment Motion at 6-10. In the context of police-civilian encounters, the right of free speech and the right to be free from retaliation for exercising that right were clearly established. See Houston v. Hill, 482 U.S. at 461 ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."); United States v. McKinney, 9 Fed. Appx. 887, 887-890 (finding that a person who told an officer to "go f*** himself" had engaged in protected speech); Stone v. Juarez, No. CIV 05-508, 2006 WL 1305039, at *13 (D.N.M. April 23, 2006)(Browning, J.)(declaring that it is clearly established that an individual has the right to criticize police actions and say "f*** you" to officers in the course of doing so). The Court notes that

Jaramillo does not contend that Garcia's verbal expressions amounted to unprotected fighting words.

While Garcia has demonstrated that Jaramillo is not entitled to qualified immunity with respect to his verbal expression retaliation claim, he has not shown that there are no genuine issues of material fact with regard to the issue. Garcia demonstrates that, in verbally protesting his detention and Jaramillo's requests for his identification, he was engaging in protected activity. See IPTR, Stipulation ## 10-11; Plaintiff's Summary Judgment Motion 6-10. Garcia thus satisfies the first element of a First Amendment retaliation claim. Garcia also shows that Jaramillo's actions – spraying someone in the face with mace and then arresting them – caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in such verbal expression. See id. Garcia, therefore, meets the second element of a retaliation claim. Garcia, however, does not demonstrate that there is no genuine issue of material fact with respect to the third element of a retaliation claim; whether his verbal expressions substantially motivated Jaramillo's actions. Jaramillo alleges that he did not spray Garcia with mace in response to his speech, but, rather to effectuate the arrest of a non-compliant and combative Garcia whose words and actions were causing the six other individuals being detained to become restless and resistant, and causing Jaramillo to fear for his safety and the safety of his partner. See Jaramillo Deposition 78:10-23, 80:17-81:1, 80:4-81:1; Defendant's Response at 18-22. Garcia has not countered Jaramillo's allegations with specific, factual evidence that would make the submission of the question whether the third element of a retaliation claim is met here to a jury inappropriate. There is a material factual dispute concerning what motivated Jaramillo's actions and whether Jaramillo could have reasonably believed that he was not violating Garcia's First Amendment rights. As such, the Court believes that it cannot grant summary judgment on Garcia's verbal expression based claim for First Amendment retaliation.

Because the Court finds that Jaramillo is entitled to qualified immunity with regard to Garcia's expressive conduct based First Amendment retaliation claim, it will deny Garcia's requests for summary judgment on that claim.  Because the Court believes that there are material factual disputes concerning Garcia's Fourth Amendment claim for illegal detention, wrongful arrest, false imprisonment, and excessive use of force, his malicious prosecution claim, his state-law tort claims for false imprisonment and battery, and his verbal expression based First Amendment retaliation claim, it will deny Garcia's requests for summary judgment on those claims.

**IT IS ORDERED** that the Plaintiff's Motion for Summary Judgment Against Defendant D. Jaramillo and Memorandum in Support is denied.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Joseph P. Kennedy
Shannon L. Oliver
Kennedy & Oliver, PC
Albuquerque, New Mexico

– and –

Philip B. Davis
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Robert M. White
  City Attorney
Catherine D. Arlowe
City of Albuquerque

   *Attorneys for the Defendant*

-31-